UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| STACIE LAWRENCE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:17CV363 |
| RANDOLPH HOSPITAL, INC. | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before this Court is Defendant Randolph Hospital, Inc.'s ("Randolph") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. #8.] This Court has considered Randolph's Motion and supporting brief [Doc. #9], Plaintiff Stacie Lawrence's Responses [Docs. #10, 11], and Randolph's Reply [Doc. #12], and concludes that Ms. Lawrence's Complaint asserts only state law claims which are preempted by the Employee Retirement Security Act of 1974 ("ERISA"). Accordingly, and for the reasons stated fully below, Randolph's Motion will be granted in part in that Ms. Lawrence's claims are preempted and denied in part in that she will be granted leave to amend her Complaint to assert her claims under ERISA.

Ms. Lawrence was employed by Randolph, a North Carolina corporation, at all times relevant to the Complaint. (Compl. [Doc. #3] ¶¶ 2, 3.) Randolph offered health and disability insurance plans administered by Key Benefit Administrators to its employees as an employee benefit. (Id. ¶ 3.) The health insurance plan,

entitled "Randolph Hospital Employee Health and Welfare Plan" and the disability insurance plan, entitled "Group Disability Insurance Policy" (collectively "Insurance Plans" or the "Plan") are incorporated by reference.[1]  (Compl. ¶ 3; [Doc. #9], Ex. A, B.)

According to Ms. Lawrence, she worked for Randolph full-time for almost eight years, with a gap in full-time employment when her daughter was born. (Compl. ¶ 5.)  Ms. Lawrence does not specify when this gap began, only that she returned to full-time work in January 2014.  (Id.)  Her coverage under the Plans began ninety (90) days from the start of her most recent full-time employment, which, according to Ms. Lawrence, was March 13, 2014.  (Id.)

On March 11, 2014, Ms. Lawrence was involved in a serious car accident. (Id. ¶ 4.)  She was airlifted to the University of North Carolina at Chapel Hill and was in a coma when she arrived.  (Id.)  As a result of the accident, she suffered brain damage, skull injuries, a shattered pelvis, broken arm and ribs, and other injuries.  (Id.)  She was declared legally incompetent on April 24, 2014, and remained legally incompetent for a period thereafter.  (Id.)  According to Ms. Lawrence, at the time of her accident, she was a full-time employee of Randolph and eligible for benefits under the Insurance Plans.  (Id. ¶ 6.)

---

[1] Although this documentation was presented to the Court by Randolph and not by Ms. Lawrence, the Court may consider such documents.  In addressing motions to dismiss, a court may consider "documents incorporated into the complaint by reference . . ."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Ms. Lawrence alleges that in April 2014, Randolph's Benefits Coordinator, Ronda Staley, falsified documents to give the appearance that Ms. Lawrence had been put "on leave" on March 10, 2014, and was, accordingly, not eligible for benefits under the Insurance Plans. (Id. ¶ 7.) Ms. Lawrence alleges that this was done so that Randolph could avoid paying the medical and disability payments that were due to her as a result of her accident. (Id. ¶ 8.) Ms. Lawrence asserts that she was not placed on leave on March 10, 2014, or any time before that, and that she was a full-time employee when her accident occurred. (Id. ¶ 7.)

As a result of these events, on March 13, 2017, Ms. Lawrence filed suit in Guilford County Superior Court against Randolph alleging: (1) Breach of Contract for Hospitalization and Medical Coverage Policy, (2) Breach of Disability Policy Contract, and (3) Civil Obstruction of Justice. (Id. ¶¶ 9-24.) She also claims punitive damages.[2] (Id. ¶¶ 25, 26.) In the alternative, Ms. Lawrence asserts a claim for Detrimental Reliance. (Id. ¶¶ 27-29.) Randolph removed the action to federal court on April 19, 2017, based on federal question jurisdiction allegedly stemming from ERISA preemption. (Pet. for Removal [Doc. #1].) Now, Randolph moves to dismiss the action, because Ms. Lawrence's state law claims are preempted by ERISA. (Def.'s Mot. to Dismiss and Mot. to Strike [Doc. #8] at 1.) Randolph further requests that, if the Court denies its Motion to Dismiss, both Ms. Lawrence's claim for punitive damages and her jury demand be struck. (Id.)

---

[2] Ms. Lawrence's original state court action was 17CVS4035.

3

A threshold question before analyzing preemption is whether or not the plans in question are governed by ERISA. Randolph argues that the Insurance Plans are governed by ERISA (Def.'s Br. in Supp. of Mot. to Dismiss [Doc. #9] at 2), and Ms. Lawrence does not contest this contention. ERISA governs any "employee welfare benefit plan" established or maintained by an employer or employee organization that is "engaged in commerce or in [an] industry or activity affecting commerce." 29 U.S.C. § 1003(a). An employee welfare benefit plan is one that "'through the purchase of insurance or otherwise,' provide[s] medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1002(1)). Thus, as Randolph is an employer engaged in commerce or an activity affecting commerce and the Plans are welfare benefit plans, the Plans are governed by ERISA.

Congress enacted ERISA to provide a uniform federal regulatory regime over employee benefit plans. Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). To ensure such uniformity, "ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." Id. Courts recognize two types of ERISA preemption: complete preemption under § 502(a), 29 U.S.C. § 1132(a), and conflict preemption under § 514, 29 U.S.C. § 1144(a). See, e.g., Sonoco Prod.

Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370-371 (4th Cir. 2003); Darcangelo v. Verizon Commc'n, Inc., 292 F.3d 181, 186-87 (4th Cir. 2002).

Complete preemption is a jurisdictional doctrine that transforms a claim into one arising under federal law "even if pleaded in terms of state law." Aetna, 542 U.S. at 208; Metro Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64, 65, 67 (1987). To determine whether a claim has such preemptive force, courts analyze whether or not the claim falls within the scope of ERISA's civil enforcement scheme, § 502(a), which provides the exclusive remedies for plans governed by ERISA. Aetna, 542 U.S. at 208–09. "ERISA's civil enforcement section, § 502, gives plan participants and beneficiaries the right to sue to force disclosure of certain information, to recover benefits due under the plan, to clarify the right to future benefits, or to enforce rights under ERISA or the plan." Darcangelo, 292 F.3d at 192. In interpreting § 502(a), the Fourth Circuit Court of Appeals has outlined a three-prong test for complete preemption: "(1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) the claim must come within the scope of an ERISA provision that can be enforced via § 502(a); and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan." Prince v. Sears Holdings Corp., 848 F.3d 173, 177 (4th Cir. 2017) (quoting Sonoco, 338 F.3d at 372).

The United States Supreme Court and the Fourth Circuit have consistently held that common law claims stemming from employee benefit claims are

5

preempted by ERISA. See, e.g., Pilot Life Ins. Co., 481 U.S. 41 (finding state common law breach of contract, fraud, and bad faith claims preempted by ERISA); Powell v. Chesapeake & Potomac Tel. Co., 780 F.2d 419, 422 (4th Cir. 1985) (finding state law claims based on the maladministration of employee benefits preempted by ERISA).

The Fourth Circuit has made clear that when a state law claim is completely preempted under § 502(a) and has been removed to federal court, dismissal of the claim is inappropriate. See Darcangelo, 292 F.3d at 195 ("[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502."). Rather, the court "may choose to grant plaintiff leave to amend her complaint in order to clarify the exact scope of relief requested under § 502(a)." Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 292 (4th Cir. 2003).

Ms. Lawrence's first two causes of action are both for breach of contract. She concedes that both claims are governed by ERISA and that she is suing for benefits due. (Br. in Opp'n to Def.'s Mot. to Dismiss [Doc. #10] at 3.)

> [Plaintiff] timely paid ongoing hospitalization and medical coverage insurance pursuant to ERISA believing that they were covered and wishing to keep the policies in force, virtually no medical bills had been paid and no disability was paid or processed. The Plaintiff in filing this action at least believed that it was possible that the action would cause the hospital Defendant to finally pay the bills and pay the disability.

6

(Id.) These two claims fall squarely within § 502(a). She is a participant or beneficiary challenging the denial of payment for services rendered under her health insurance and disability insurance plans. Thus, both claims are completely preempted by ERISA.

Ms. Lawrence's third cause of action is for civil obstruction of justice. Civil obstruction of justice is a common law cause of action, consisting of "'acts which obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice.'" Grant v. High Point Reg'l Health Sys., 645 S.E.2d 851, 855 (N.C. Ct. App. 2007) (quoting Henry v. Deen, 310 S.E.2d 326, 334 (N.C. 1984)). "The common law offense of obstructing public justice may take a variety of forms." Id. at 853. Ms. Lawrence argues that this cause of action is not preempted by ERISA because "the purpose of [the] state statute or [the] state law is something other than regulating employee welfare benefit plans. . ." (Br. in Opp'n to Def.'s Mot. to Dismiss at 4.) This may be true; however, the damage plead for her third cause of action is the non-payment of medical bills by her insurance and denial of coverage. (Compl. ¶ 24.) Like her first two claims, this claim stems from her allegations that Randolph altered documentation in order to avoiding paying her benefits. In essence, even in the third cause of action, she is suing to recover benefits due under her employer insurance plans. See, e.g., Powell, 780 F.2d at 422 ("To the extent that ERISA

7

redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law.") Therefore, as the remedy for the third claim is recovery of benefits under the Insurance Plans, Ms. Lawrence's third claim is also completely preempted by ERISA.

Ms. Lawrence's final claim is for detrimental reliance, in which she alleges that she paid for the Insurance Plans and relied to her detriment on her benefits being available when she needed them. (Compl. ¶¶ 28, 29.) Like the first three claims, this is also an action to enforce the terms of her Insurance Plans and recover benefits. Thus, it is also completely preempted by ERISA. See, e.g., Lippard v. Unumprovident Corp., 261 F. Supp. 2d 368, 377 (M.D.N.C. 2003) (finding detrimental reliance claim was an alternative enforcement mechanism to § 502 of ERISA and was preempted).

Looking at the preemption factors, the Court finds that all four of Ms. Lawrence's claims are completely preempted by ERISA. First, Ms. Lawrence has standing as a plan participant under both Plans. Second, when distilled, her claims

are all to recover benefits under ERISA-governed plans.[3] These are the exact type of state law claims that fall within the scope of ERISA's civil enforcement scheme, § 502(a). And third, resolving her claims, whether or not she was due benefits under the Plans, necessitates interpretation of ERISA-governed employee benefit plans. Thus, her claims are completely preempted by § 502.

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant Randolph Hospital, Inc.'s Motion to Dismiss [Doc. #8] is **GRANTED IN PART** in that Plaintiff's claims are completely preempted by ERISA and **DENIED IN PART** in that Plaintiff Stacie Lawrence is **GRANTED** leave to amend her Complaint. **IT IS FURTHER ORDERED** that Plaintiff has thirty (30) days from the filing of this Memorandum Opinion and Order to file an amended complaint asserting her allegations as claims under ERISA. **IT IS FURTHER ORDERED** that entry of

---

[3] Even when a plaintiff asks for damages in addition to unpaid benefits, the claims do not fall outside the scope of ERISA preemption.

> ERISA does not permit recovery of money damages, but its preemptive scope is not diminished simply because a finding of preemption will leave a gap in the relief available to a plaintiff. Indeed, the Supreme Court long ago held that [t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Prince, 848 F.3d at 178−79 (internal citations and quotations omitted).

9

judgment on this dismissal is stayed for a period of thirty (30) days from the filing of this Memorandum Opinion and Order to allow Plaintiff to amend her Complaint.

**IT IS FURTHER ORDERED** that if no amended complaint is filed within the time allotted, the stay shall be lifted and judgment will be entered as to the claims as filed.

This the 26th day of March, 2018.

/s/ N.Carlton Tilley, Jr.<br>
Senior United States District Judge